UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CANDACE C.[1], | Case No.: 3:19-cv-00630-MK |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**KASUBHAI, Magistrate Judge:**

Plaintiff Candace C. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") decision denying her application for Title XVI Supplemental Security Income ("SSI") under 42 U.S.C. §§ 1381a and 1382c(a)(3)(A). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). Both parties consent to jurisdiction by a U.S. Magistrate Judge. For the reasons set forth below, the Commissioner's decision should be reversed and remanded for immediate calculation and award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental parties in this case.

## BACKGROUND

Plaintiff protectively filed an application for Supplemental Security Income on May 29, 2015, alleging disability beginning June 1, 2011. Tr. 131-39.  Her claim was initially denied on August 13, 2015, and upon reconsideration on January 5, 2016.  Tr. 48-65, 68-71, 75-77. Plaintiff timely requested and appeared for a hearing before Administrative Law Judge ("ALJ") Elizabeth Watson on December 14, 2017. Tr. 32-47, 78-80.  The ALJ denied Plaintiff's application in a written decision dated March 20, 2018. *See* Tr. 12-25.  Plaintiff sought review from the Appeals Council. *See* Tr. 129-30.  The Appeals Council denied review of the ALJ's decision. Tr. 1-6.  Plaintiff now seeks judicial review of the decision.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).  To determine whether substantial evidence exists, a court reviews the administrative record as a whole, "weighing both the evidence that supports and detracts from the ALJ's conclusion." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## THE SEQUENTIAL ANALYSIS

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920.  The initial burden of proof rests upon the claimant to meet the first four steps. *Id.*  If the claimant satisfies her burden with respect to

the first four steps, the burden shifts to the commissioner at step five. *Id.*; *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4). At step two, the Commissioner determines whether the claimant has one or more severe impairments that are expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). At step three, the Commissioner determines whether any of those impairments "meets or equals" one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. § 416.920(a)(4)(ii). The Commissioner then assesses the claimant's residual functional capacity ("RFC"). *Id.* At step four, the Commissioner determines whether claimant's RFC allows for any past relevant work. *Id.* At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

## DISCUSSION

In the present case, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application date of May 29, 2015. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: Tourette's syndrome and Depression. *Id.*

At step three, the ALJ found that none of those severe impairments met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17-19.

Prior to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and determined she could

> perform a full range of work at all exertional levels but with the following non-exertional limitations.  The claimant is limited to understanding and carrying out simple instructions.  She should have no contact with the public and no more than occasional contact with co-workers and supervisors.

Tr. 19-20.

At step four, the ALJ found that Plaintiff had no past relevant work experience. Tr. 20. At step five, she found that Plaintiff retained the ability to perform the requirements of jobs existing in significant numbers in the national economy, such as Production Assembly, Electrical Assembly, and Routing Clerk. Tr. 21-22.  The ALJ then found that Plaintiff had not been under a disability, as defined by the Act, since May 29, 2015, the date the application was filed. Tr. 22.

Plaintiff seeks review by this Court contending that the ALJ erred in (1) improperly discounting treating doctor Shelly Svoboda's opinion, (2) improperly rejecting Plaintiff's subjective complaints, (3) improperly rejecting Plaintiff's lay witness testimony, and (4) improperly finding her fibromyalgia and obesity were not severe impairments at step two. Pl.'s Br. 2 (ECF No. 15).

Plaintiff requests this case be reversed and she be found disabled.  Alternatively, Plaintiff requests the case be remanded for the Commissioner to reconsider evidence that was improperly discounted. *Id.* at 18.  The Court addresses Plaintiff's arguments below.

## I. Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  Specific and legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray v. Commissioner*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014); *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)). "[T]he opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Dr. Shelly Svoboda saw Plaintiff for her Tourette's syndrome from 2015 to 2017. Tr. 271-77. On December 21, 2015, Dr. Svoboda wrote that Plaintiff said she probably had

symptoms of Tourette's syndrome "as early as 7 or 8 years old." Tr. 273.  On July 31, 2017, Dr. Svoboda noted that Plaintiff was previously prescribed Seroquel by a neurologist in Utah, and although Dr. Svoboda found Plaintiff was doing "fairly well" on Seroquel, she noted Plaintiff continued to exhibit scratching behaviors. *Id.*  During this appointment, Dr. Svoboda referred Plaintiff to Linn County Mental Health for cognitive behavior therapy. Tr. 272.  On November 14, 2017, Dr. Svoboda completed a medical opinion questionnaire where she wrote that Plaintiff would be markedly limited in managing her symptoms, ignoring distractions at work, sustaining ordinary attendance at work, and "[w]orking a full day without needing more than the allotted number or length of rest periods during the day." Tr. 353.  Dr. Svoboda noted her opinion was based on "observation" and "history." *Id.*

The ALJ gave "partial weight" to Dr. Svobda's November 14, 2017 medical opinion questionnaire, finding that "the objective medical evidence that is in the file do not support the severity of limitations." Tr. 20.  In making this conclusion, the ALJ summarized Plaintiff's appointments with Dr. Svoboda and the medical opinions of reviewing doctors, Dr. Bill Hennings and Dr. Arthur Lewy. Tr. 19-20.  The ALJ wrote that Dr. Svoboda found Plaintiff was doing "fairly well" on Seroquel, that she would not need to see Plaintiff for a year, and that Dr. Svoboda referred Plaintiff for cognitive behavior therapy. Tr. 20.  For Dr. Hennnings' and Dr. Lewy's medical opinions regarding Plaintiff's Tourette's syndrome, the ALJ wrote that they found Plaintiff "does fine while taking medications" and that Plaintiff would have "no more than mild limitations" in functioning. Tr. 19.

Dr. Svoboda's medical opinion conflicted with the opinions of reviewing doctors, Dr. Hennings and Dr. Lewy, so the ALJ was required to provide a specific and legitimate reason to reject Dr. Svoboda's medical opinion.  *See Garrison*, 759 F.3d at 1012, (quoting *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995)) ("If a treating or examining doctor's opinion is

contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and

legitimate reasons that are supported by substantial evidence.")  Plaintiff argues that the ALJ's

reason for rejecting Dr. Svoboda's medical opinion is conclusory. Pl.'s Br. 9 (ECF No. 15.)

Indeed, since the ALJ gave only "little weight" to the medical opinions of Dr. Hennings and Dr.

Lewy, it is unclear what specific and legitimate reasons the ALJ was using to reject Dr.

Svoboda's medical opinion.  Although the medical records are sparse, the ALJ is required to

support her conclusion with legally sufficient reasons. *See Garrison,* 759 F.3d at 1013.

  The Commissioner argues there was no error in the ALJ's evaluation of the medical

opinion evidence in the record and Plaintiff's RFC was supported by substantial evidence. Def.'s

Br. 14 (ECF No. 16).  The substantial evidence the Commissioner cites are the medical opinions

of Dr. Hennings and Dr. Lewy. *Id*; Tr. 52-53, 61-62.  The Commissioner acknowledges that the

ALJ did not accept their medical opinions, but that the ALJ was "not required to adopt their

opinions in order for them to constitute substantial evidence supporting the ALJ's decision."

Def.'s Br. 14 (ECF No. 16).  Specifically, the Commissioner argues that the ALJ's decision to

"temper" Dr. Hennings' and Dr. Lewy's less restrictive medical opinions in Plaintiff's favor,

thus creating a more restrictive RFC than their medical opinions supported, meant Plaintiff

cannot show error. *Id.* (citing *Hopper v. Colvin,* No. 6:13-CV-01525-HZ, 201 WL 6473566, at

*4 (D. Or. Nov. 14, 2014) (quoting *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012))).

The Commissioner's argument is not persuasive.

  Dr. Hennings reviewed Plaintiff's file at the initial level. *See* Tr. 52-53.  He found

Plaintiff suffered from the following medically determinable impairments: fibromyalgia, "[o]ther

and unspecified arthropathies," an eating and tic disorder, and affective disorders. Tr. 52.  He did

not find any of Plaintiff's medically determinable impairments were severe *Id*. He found Plaintiff had mild restrictions in activities of daily living, mild difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence or pace, and no repeated episodes of decompensation lasting for extended duration. *Id*. Dr. Hennings wrote that he considered Plaintiff's depression and Tourette's, but overall found she had good management of her symptoms with her prescribed medications. *Id*.

Dr. Lewy reviewed Plaintiff's file on reconsideration. *See* Tr. 61-62. Dr. Lewy found Plaintiff suffered from the following medically determinable impairments: fibromyalgia, "[o]ther and unspecified arthropathies," "[d]isorders of back-[d]iscogenic and [d]egenerative," an eating and tic disorder, and affective disorders. Tr. 61. He did not find any of Plaintiff's medically determinable impairments were severe. *Id*. He also found Plaintiff had mild restrictions in activities of daily living, mild difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence or pace, and no repeated episodes of decompensation lasting for extended duration. *Id*. He found Plaintiff had good management of her Tourette's and depression with prescription medication. *Id*. Overall, he wrote that "given statements to providers, medical conclusions, objective findings and the nature/intensity of tx (treatment), no more than minimal functional limitations are established." *Id*.

The ALJ reviewed the medical opinions of Dr. Hennings and Dr. Lewy and noted that they found Plaintiff had "no more than mild limitations in three of the broad areas of functioning, and no limitations in her ability to adapt and manage herself." Tr. 19. Additionally, the ALJ wrote that both found that Plaintiff's "does fine while taking [Tourette's] medications and that her depression was well managed." *Id*. However, the ALJ gave these medical opinions "little weight" when forming Plaintiff's RFC. *Id*. The ALJ wrote that although Dr. Hennings and Dr.

Lewy "found [Plaintiff's] impairments non-severe" the record "indicates that the [Plaintiff's] impairments cause greater limits than Dr. Hennings and Dr. Lewy assessed." *Id*. Overall, in forming Plaintiff's RFC, the ALJ limited Plaintiff to "understanding and carrying out simple instructions," and to have "no contact with the public and no more than occasional contact with co-workers and supervisors." *Id*.

The Commissioner argues that Plaintiff cannot show the ALJ erred in evaluating her mental limitations since the ALJ included more restrictive mental limitations into Plaintiff's RFC than those described by Dr. Hennings and Dr. Lewy. Def.'s Br. 14 (ECF No. 16). The Commissioner relies on *Hopper v. Colvin* and *Chapo v. Astrue*. In both *Hopper* and *Chapo*, the entire medical record supported less restrictive RFC findings, yet the ALJs created RFCs that were more restrictive than the medical records supported. *See Hopper*, 201 WL 6473566, at *4; *Chapo*, 682 F.3d at 1288. The courts held that tempering the evidence in each claimants' favor was not reversible error. *Id.* However, this case is distinguishable.

The medical evidence in this record conflicts regarding the severity of Plaintiff's mental health limitations. The medical opinions of Dr. Hennings and Dr. Lewy both found Plaintiff had mild limitations in functioning, managing herself, and adapting. *See* Tr. 53. 62. However, in Dr. Svoboda's November 14, 2017 medical opinion questionnaire she wrote that Plaintiff was markedly limited in managing symptoms, ignoring distractions, and working a full day without needing more than the allotted amount of rest period, and was extremely limited in her ability to work close to, or with others, without interrupting or distracting them. Tr. 353. Unlike *Hopper* and *Chapo*, the ALJ did not "temper" the RFC in Plaintiff's favor, meaning the ALJ did not create a more restrictive RFC finding than the medical records supported. Here, the ALJ created an RFC that was more restrictive than the medical opinions of Dr. Hennings and Dr. Lewy, but

less restrictive that the medical opinion of Dr. Svoboda. *See* Tr. 19. It is unclear why the ALJ's decision to give little weight to the medical opinions of Dr. Hennings and Dr. Lewy eliminates the need for the ALJ to provide a specific and legitimate reason for rejecting Dr. Svoboda's more restrictive medical opinion regarding Plaintiff's mental health limitations. Therefore, the Commissioner's argument fails.

The Commissioner also argues that Dr. Svoboda's opinion was undermined by her own objective medical evidence, noting that Plaintiff was doing "fairly well" on Seroquel, and that the ALJ found "no indication in the file that the claimant's Tourette's syndrome had an increase in symptoms, or was causing the claimant additional problems." Def.'s Br. 15 (ECF No. 16). The Commissioner goes on to cite additional treatment notes in the medical record to support this conclusion. *Id.*

As Plaintiff argues, and this Court agrees, the ALJ failed to consider the entirety of Dr. Svoboda's treatment notes. Pl.'s Br. 7 (ECF. No. 15). Dr. Svoboda's treatment notes from December 21, 2015, June 23, 2016, and July 31, 2017 all indicate that Plaintiff continued to experience scratching behaviors even while taking Seroquel, and during the July appointment Dr. Svoboda referred Plaintiff to Linn County Mental Health for additional cognitive behavioral treatment. Tr. 271-77. Second, although the Commissioner cites other medical records in evidence to support the ALJ's conclusion that Plaintiff's Tourette's syndrome was not causing her additional problems, the Court cannot accept this reason to discredit Dr. Svoboda's medical opinion evidence because the ALJ did not make this finding in her decision. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (a district court cannot affirm a non-disability decision based upon grounds the ALJ did not invoke). Since the ALJ failed to provide legally sufficient reasons for giving Dr. Svoboda's medical opinion questionnaire "partial weight," this

Court finds the ALJ failed to properly discredit Dr. Svoboda's medical opinion provided in her November 14, 2017 medical opinion questionnaire.

## II. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (internal citation omitted). A general assertion the claimant is not credible is insufficient; instead, the ALJ must "state which … testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[2] provides that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029 at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

---

[2] Effective March 28, 2016, SSR 16-3p supersedes and replaces SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ did not find evidence of malingering. *See* Tr. 12-25. Thus, the ALJ was required to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony. Here, the ALJ found "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 19. The ALJ provided no additional explanation for rejecting Plaintiff's subjective symptom testimony. Tr. 12-25.

The ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (9th Cir. 1998) (quoting *Lester*, 81 F.3d at 834; *Dodrill*, 12 F.3d at 918). Since the ALJ failed to provide any additional explanation for which parts of Plaintiff's subjective symptom testimony she rejected, and what evidence she used to reject that testimony, this Court finds the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

The Commissioner argues that "the Ninth Circuit does not require an incantation of 'magic words' from the ALJ," and that this Court "may look at the ALJ's decision as a whole and draw reasonable inferences therefrom." Def.'s Br. 10-11 (ECF No. 16). Specifically, the

Commissioner argues that the ALJ reasonably rejected Plaintiff's subjective symptom testimony when evaluating Plaintiff's "paragraph B" criteria at page eighteen of the ALJ's decision. *Id.* at 11; (citing *Lewis v. Apfel*, 236 F.3d 503, 513-14 (9th Cir. 2001) (an ALJ's findings were upheld when the ALJ's reasoning was described elsewhere in the opinion).  However, even considering the ALJ's paragraph B findings, this Court finds the ALJ still did not provide clear and convincing reasons to reject Plaintiff's subjective symptom testimony.

When determining whether Plaintiff's mental impairments met or medically equaled the criteria of listings 12.04 and 12.11, the ALJ considered whether "paragraph B" criteria were satisfied. Tr. 18.  During the ALJ's paragraph B analysis, the ALJ recounted Plaintiff's activities of daily living. *Id.*  First, the ALJ noted that although Plaintiff "alleged that she has difficulty remembering and she is currently not allowed to drive," she also "prepares meals and is able to pay bills." *Id.*  The ALJ also noted that Plaintiff could "provide information about her health, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers." *Id.*  Next, the ALJ wrote that Plaintiff "alleged that she has difficulty getting along with others," but "according to her statements, the claimant is also able to spend time with friends and family, attend church, and deal appropriately with authority." *Id.*  The ALJ noted that Plaintiff said she "has limitations in concentrating and focusing," but the ALJ also found "she is able to manage her funds, use the internet, and attends church." *Id.*  Finally, the ALJ noted that Plaintiff had "appropriate grooming and hygiene." *Id.*

An ALJ may use a claimant's activities of daily living to determine symptom allegation credibility in order to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills.  *Orn v. Astrue*, 495 F.3d 625, 639

(9th Cir. 2007). Here, the ALJ failed to do either. First, the ALJ fails to explain why Plaintiff's ability to perform these activities of daily living contradict her subjective symptom testimony regarding her limitations. Plaintiff testified, and wrote in her functional report, that she experiences good and bad days with respect to her impairments, but that she tries to do as much as she can despite her limitations. Tr. 42, 158. She also testified that she becomes fatigued quickly, still exhibits tics associated with her Tourette's syndrome despite using medication, and has episodes where her head or arms jerk uncontrollably, sometimes causing her back to seize up. Tr. 38-43. The ALJ has not explained why any of Plaintiff's activities of daily living are inconsistent with this testimony, especially since Plaintiff acknowledges experiencing good and bad days. Therefore, the ALJ has not explained the alleged inconsistencies in Plaintiff's testimony.

Second, the ALJ failed to explain how any of Plaintiff's activities meet the threshold for transferable work skills. Although Plaintiff could perform some activities of daily living, she also testified that she can only perform activities for short periods of time before they "wipe [her] out." *See* Tr. 36. The ALJ does not explain any further how Plaintiff's ability to perform minimal activities of daily living meets the threshold for transferable work skills. Therefore, even considering the ALJ's paragraph B analysis, this Court finds the ALJ has not provided clear and convincing reasons to discredit Plaintiff's subjective symptom testimony in any part of her decision.

## III. Lay Witness Testimony

The Code of Federal Regulations specifically provides that opinions from nonmedical sources can be provided for consideration. 20 C.F.R. §§ 416.927(f), 416.902(e). "Competent lay witness testimony cannot be disregarded without comment, and … in order to discount

competent lay witness testimony, the ALJ must give reasons that are germane to each witness."
*Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation marks and citations omitted).  If the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints and if the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony.
*Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 694 (9th Cir. 2009); 20 C.F.R.
§§ 416.929(c)(3), 416.945(a)(3).

Here the ALJ found the testimony of Michael C., Camille H., and Kathryn T.[3] concerning Plaintiff's symptoms and limitations was "generally consistent with the totality of the evidence." Tr. 20.  The ALJ provided no other explanation for how she evaluated the lay witness testimony. *See* Tr. 12-25. Plaintiff argues that although the ALJ found the lay witness testimony generally consistent with the totality of the evidence, she failed to incorporate the lay witness testimony describing Plaintiff's fatigue, constant pain, and memory issues into Plaintiff's RFC.  Pl.'s Br. 14-16 (ECF No. 15).  Therefore, Plaintiff argues the ALJ essentially rejected the lay witness testimony without providing germane reasons to do so. *Id*.

The Commissioner counters that Plaintiff has not identified any concrete limitations in the lay witness statements that conflict with the RFC assessment. Def.'s Br. 16-17 (ECF No. 16). Additionally, the Commissioner argues that any error is harmless because the "ALJ's failure to properly address lay testimony is unlikely 'to affect the outcome in situations where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited.'" *Id*. at 16; (citing *Molina*, 674 F.3d at 1118-19).  This Court disagrees.

---

[3] For the same reason stated in footnote 1, this Opinion and Order uses only the first name and the initial of the last name of the lay witnesses.

First, although the ALJ found the lay witness statements were "generally consistent with the totality of the evidence" she did not properly account for the limitations they described. Plaintiff's husband, Mr. Michael C., described Plaintiff's Tourette's attacks which "happen with out (sic) warning," including one that occurred in July 2015 that caused Plaintiff's back to seize up and required her to be "placed in the fetal position until the pain left." Tr. 176. Plaintiff's aunt, Ms. Kathryn T., described Plaintiff's good days and bad days, with "constant pain and fatigue" that "made it impossible for [Plaintiff] to be consistent." Tr. 217. Finally, Plaintiff's mother, Ms. Camille H., described Plaintiff's struggles with memory, writing that although "[t]here are things [Plaintiff] is really sharp at," Plaintiff still needs things to "be very repetitive for her to really grasp it…." Tr. 218.

Mr. C's and Ms. T.'s statements corroborate Plaintiff's statements. Because the ALJ improperly discredited Plaintiff's subjective symptom testimony, the limitations that Mr. C and Ms. T described were also not incorporated into Plaintiff's RFC. Thus, their statements were effectively rejected without germane reasons for doing so. Ms. H's statements regarding Plaintiff's memory provide more detailed information than Plaintiff described. *See* Tr. 218. Here, the ALJ failed to give a germane reason to discount Ms. H's more restrictive comments regarding Plaintiff's memory. Therefore, this Court finds the ALJ improperly rejected the lay witness testimony without providing germane reasons to do so.

Additionally, this Court rejects the Commissioner's argument that any error is harmless because testimony is similar to that of testimony that was properly discounted. As discussed above, the ALJ failed to properly assess Plaintiff's subjective symptom testimony. Therefore, even if the lay witness testimony completely mirrored Plaintiff's testimony, these opinions were not incorporated into Plaintiff's RFC since the ALJ improperly rejected Plaintiff's subjective

symptom testimony.  Additionally, the testimony of Ms. H is more restrictive, so discrediting her testimony without a germane reason would not be harmless error.   The ALJ failed to provide germane reasons to reject the lay witness testimony, and this was reversible error.

## IV. Severe Impairment Finding at Step Two

An impairment is not severe for purposes of a social security disability benefits case if it amounts to only a slight abnormality that would not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921. In other words, if the impairment would have no more than a minimal effect on a claimant's ability to work, it does not satisfy the requirements of step two of the sequential analysis. *Id.*

At step two, the ALJ found Plaintiff's Tourette's syndrome and depression were severe impairments, but determined her fibromyalgia and obesity were "non-severe."  Tr. 17.  The Court addresses each impairment in turn.

### A. Fibromyalgia

Plaintiff argues the ALJ erred by failing to find her fibromyalgia was a severe impairment at step two, which caused the ALJ to fail to incorporate any limitations related to fibromyalgia into Plaintiff's RFC. Pl.'s Br. 16 (ECF No. 15).

Plaintiff's medical records show a history of fibromyalgia.  On August 15, 2014, Lindsey McKay, PA-C, noted that Plaintiff's fibromyalgia was currently "well managed." Tr. 235.  On December 18, 2015, FNP Jacquelyn Sinclair wrote that Plaintiff's fibromyalgia pain was "under control with Lyrica." Tr. 296, 299.  On September 13, 2016, Mark Berger, NP-C, wrote that Plaintiff experienced pain, complained of fibromyalgia, and had "11 positive pressure points." Tr. 267.  On December 14, 2016, Mr. Berger noted that Plaintiff had "[p]ain localized to one or more joints," that joint stiffness was a "chronic condition," and overall determined Plaintiff showed findings that were "normal Fibromyalgia, positive pressure points." Tr. 259.  On April

10, 2017, Dr. Aaron Erez noted that Plaintiff told him that her fibromyalgia "sometimes prevents her from daily exercise." Tr. 317.

At step two, the ALJ recognized Plaintiff's fibromyalgia, but found there were "no significant objective medical findings…to support more than minimal limitations on the claimant's ability to perform work activities arising from" this impairment. Tr. 17.  The ALJ erred by failing to find Plaintiff's fibromyalgia was not a severe impairment at step two.

Fibromyalgia is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).  "[T]here are no laboratory tests to confirm the diagnosis." *Id.*  SSR 12-2P governs the evaluation of fibromyalgia and explains that symptoms will "wax and wane," and an individual experiencing fibromyalgia may experience "bad and good days." SSR 12-2P, at *6.  "In light of this, [SSR 12-2P] warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider 'a longitudinal record whenever possible.'" *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017), quoting SSR 12-2P.

The ALJ recognized Plaintiff's fibromyalgia but discounted its severity and the limitations it would have on Plaintiff's ability to work. *See* Tr. 17.  However, given the nature of this impairment, it was unreasonable for the ALJ to reach this conclusion.  Although the medical record showed minimal limitations relating to fibromyalgia, Plaintiff's subjective symptom testimony and the testimony of her lay witnesses describe a history of pain and fatigue associated with this impairment. *See* Tr. 38-41, 154-61, 176-83, 217-18.  As the ALJ improperly rejected Plaintiff's subjective symptom testimony, and the testimony of the lay witnesses, it follows that the ALJ improperly found Plaintiff's fibromyalgia would have no more than a minimal effect on

Plaintiff's ability to perform basic work activities. For this reason, the ALJ erred by not finding Plaintiff's fibromyalgia was severe at step two.

The Commissioner argues that the ALJ's findings were consistent with the fact that, besides tender points, Plaintiff had normal musculoskeletal and neurological exams. Def.'s Br. 8 (ECF No. 16). Additionally, the Commissioner notes that the ALJ's findings were consistent with the opinions of reviewing doctors, Dr. Lloyd Wiggins and Dr. Jeffrey Merrill, who both found Plaintiff had no severe physical impairments. *Id.* Fibromyalgia is based entirely on a claimant's subjective symptom testimony, so it is not unusual for medical records to lack specific findings. *See Benecke*, 379 F.3d at 590. Thus, this argument is not persuasive. Additionally, as the ALJ did not specifically rely on Dr. Wiggins' and Dr. Merrill's medical opinions when making her decision, this Court cannot rely on these findings to affirm the ALJ's disability determination. *See Burrell*, 775 F.3d at 1141.

Since the ALJ continued the sequential analysis, this Court reviews whether the ALJ's error in finding Plaintiff's fibromyalgia not severe at step two was a harmless error. An error at step two is harmless if an ALJ nonetheless considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). However, since the ALJ failed to properly consider Plaintiff's subjective symptom testimony and the lay witness testimony, both of which describe fatigue and pain related to Plaintiff's fibromyalgia, it follows that the ALJ failed to properly consider Plaintiff's fibromyalgia when determining the RFC. Therefore, the ALJ's error at step two with respect to Plaintiff's fibromyalgia is not a harmless error.

///

///

**B. Obesity**

The ALJ found Plaintiff's obesity was not severe because there was "no significant objective medical findings to support more than minimal limitations." Tr. 17.  Plaintiff argues the ALJ erred by finding her obesity was not a severe impairment, and thus did not incorporate any limitations from Plaintiff's obesity in the RFC. Pl.'s Br. 16 (ECF No. 15).  Plaintiff cites medical records from April 10, 2017, where Plaintiff was diagnosed with morbid obesity and had a BMI (body mass index) of 43. *See* Tr. 318.  Although, this medical record reflects this diagnosis, the remaining medical records do not show any limitations related to Plaintiff's obesity. As there is nothing in the record to support a finding that Plaintiff's obesity would have more than a minimal effect on Plaintiff's ability to work, the ALJ reasonably determined her obesity was not a severe impairment at step two.  There is no error.

## CONCLUSION

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke*, 379 F.3d at 593).  The Court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting

such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 2003)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the first prong of the credit-as-true analysis is met because the ALJ failed to provide legally sufficient reasons for: (1) rejecting Dr. Svoboda's medical opinion concerning Plaintiff's Tourette's syndrome; (2) rejecting Plaintiff's subjective testimony; (3) rejecting the lay witness testimony; and (4) finding Plaintiff's fibromyalgia was not a severe impairment at step two. As to the second prong, there are no outstanding issues that must be resolved, and the record has been fully developed. Finally, the third prong is met because it is clear from the record that if the ALJ fully credited Plaintiff's subjective symptom testimony, the lay witness testimony, and the medical opinion of Dr. Svoboda, the Commissioner would be required to find Plaintiff disabled.

On December 14, 2017, the VE testified that if a person was absent from work more than 16 hours a month or was off task or needing extra breaks for more than 15 percent of the day, they would not be able to sustain competitive employment. Tr. 45. Crediting Plaintiff's testimony and Plaintiff's lay witness testimony support a finding that her daily Tourette's syndrome attacks, and pain and fatigue from fibromyalgia would prevent her from maintaining competitive employment. *See* Tr. 38-41, 154-61, 176-83, 217-18. Additionally, Dr. Svoboda's medical opinion shows Plaintiff would be markedly limited in her ability to perform workplace activities due to her Tourette's syndrome. *See* Tr. 352-54.

For the reasons set forth, the Commissioner's decision is reversed and this matter is remanded for the immediate calculation and payment of benefits.

DATED this 20th day of April 2020.


 s/Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge